UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMA JUNCAJ and MARE JUNCAJ,

    Plaintiffs,

v.

CERVERA TRANSPORT and JUAN
ALBERTO AGUILAR,

    Defendants.
_____/

Case No. 08-11175

Honorable John Corbett O'Meara

**OPINION AND ORDER DENYING DEFENDANTS' AUGUST 21, 2009 MOTION FOR SUMMARY JUDGMENT**

This matter came before the court on Defendants' August 21, 2009 motion for summary judgment. The court granted a stay for bankruptcy proceedings October 9, 2009, and lifted the stay February 10, 2010. Plaintiff filed a response March 19, 2010; and the court set a hearing date for the motion. However, the court adjourned the hearing date, awaiting the decision of the Michigan Supreme Court in McCormick v. Carrier, which was issued July 31, 2010. The parties then filed supplemental briefs September 1, 2010. Oral argument was heard October 7, 2010. For the reasons set forth below, the court will deny the motion.

**BACKGROUND FACTS**

This case arises out of a November 2, 2007 automobile accident between defendant Juan Aguilar, driving a truck owned by defendant Cervera Transport ("Cervera"), and plaintiff Toma Juncaj in Trenton, Michigan. The collision occurred between Plaintiff, making a left turn onto Fort Street from eastbound Van Horn, and defendant Aguilar, travelling northbound on Fort.

1

Plaintiffs make a claim pursuant to MCL 500.3135, alleging that "serious impairment of body functions" resulted from the accident. Injuries alleged include a closed-head injury, post-traumatic stress disorder, dizziness and balance problems, a pulmonary contusion, right rib fractures, C5-C7 radiculapathy, a pinched nerve at C5, muscle spasms, neck pain, back pain, shoulder pain, and a right rotator cuff tear for which Plaintiff has undergone surgery.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 applies to motions for summary judgment. On a motion for summary judgment, "Judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a motion for summary judgment, the burden is on the movant to show that there is no genuine issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986). A party can support a summary judgment motion with materials that show that the party who has the burden of proof for an essential fact cannot prove that fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Thus, non-moving parties must produce evidence and set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 256-57 ("The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.") A judge's inquiry must ask whether "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Anderson, 477 U.S. at 252. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.**"** Anderson, 477 U.S. at 255.

All justifiable inferences are to be drawn in favor of the non-moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

## **LAW & ANALYSIS**

McCormick v. Carrier, 2010 WL 3063150, Mich., July 31, 2010, is the controlling case law interpreting MCL 500.3135. This recent case overrules Kreiner v. Fisher, 471 Mich. 109 (2004).

MCL 500.3135(1) provides,

A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

Plaintiffs allege a serious impairment of body function. MCL 500.3135(7) creates a three-prong test for serious impairment of body function and defines it as "[1] an objectively manifested impairment of [2] an important body function that [3] affects the person's general ability to lead his or her normal life."

First, an objectively manifested impairment is considered an impairment which is observable or perceivable from actual symptoms or conditions. McCormick at 14. Thus, "the proper inquiry is whether the *impairment* is objectively manifested, not the *injury* or its symptoms." Id. An impairment is distinguished from an injury—a wound or other specific damage—as it is a state of being weakened, diminished, or damaged. Id. at 14-15. The McCormick court concluded that "when considering an 'impairment,' the focus 'is not on the injuries themselves, but how the injuries affected a particular body function.'" Id. (citing

DiFranco v. Pickard, 427 Mich. 32, 67(1986)). To the extent that Kreiner could be read to *always* require medical documentation, it was overruled.

Second, an important body function is one "marked by or having great value, significance, or consequence." Id at 16-17. It is an inherently subjective inquiry, as a body function may have more significance or value to one person than another. An important body function does not refer to *any* body function but also does not refer to the *entire* body function. Id . at 17 (citing Cassidy v. McGovern , 415 Mich. 483, 504).

Third, an impairment which affects the person's general ability to lead his or her normal life is one which "[has] an influence on some of the person's capacity to live in his or her normal manner of living." Id. at 20. The court found that the statute requires merely "that a person's general ability to lead his or her normal life has been *affected*, not destroyed" and "that some of the person's *ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." Id. The court maintained that "there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." Id.

The interpretation of this third prong is one of the most notable changes from the prior ruling law in Kreiner. The Kreiner majority had found that "the effect of the impairment on the course of a plaintiff's entire normal life must be considered," and if "the course or trajectory of the plaintiff's normal life has not been affected, then the plaintiff's 'general ability' to lead his normal life has not been affected." Id. at 23 (citing Kreiner, 471 Mich. at 131). Thus, the Kreiner standard presented a higher bar for plaintiffs to overcome. The change in law impacts a motion for summary judgment as well. A factual dispute which might have been found

immaterial to satisfying the third prong's high bar may become material under this less rigorous standard.

Before a court can determine as a matter of law whether an injured person has suffered a serious impairment of body function, it must determine whether a factual dispute regarding the nature and extent of the person's injuries exists. If a factual dispute exists, it must determine whether this dispute is material to determining serious impairment. If the dispute is immaterial, it is a question of law for the court. If it is material, it is a question of fact for the jury. Id. at 34.

This is codified in MCL 500.3135(2) which provides,

> For a cause of action for damages pursuant to subsection (1) filed on or after July 26, 1996, all of the following apply:
>
> (a) The issues of whether an injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:
>
> (i) There is no factual dispute concerning the nature and extent of the person's injuries.
>
> (ii) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement. However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury.

Regarding plaintiff Juncaj's alleged traumatic brain injury ("TBI"), MCL 500.3135(2)(a)(ii) applies. Gerald Shiener, M.D., has testified that he regularly diagnoses and treats TBI patients and that, in his opinion, Plaintiff has suffered a serious neurologic injury. In addition, Holly Lorigan, D.O., Plaintiff's treating neurologist, testified that she regularly diagnoses and treats TBI patients and that, in her opinion, Plaintiff has suffered a serious neurologic injury. Given that two physicians who regularly diagnose or treat closed-head

5

injuries have testified that there may be a serious neurological injury, under MCL 500.3135(2)(a)(ii), a question of fact for the jury has been created. Therefore, the court will not grant summary judgment on that alleged impairment.

It remains for this court to determine whether the factual dispute as to other injuries is material and whether Plaintiffs have provided enough evidence to support their burden of proof at trial. The remaining injuries include a pulmonary contusion, right rib fractures, dizziness and balance problems, C5-C7 radiculapathy, a pinched nerve at C5, muscle spasms, low back pain, and a right rotator cuff tear for which Plaintiff has undergone surgery.

The nature and extent of other injuries are disputed. Plaintiffs claim in their initial response brief that Mr. Juncaj was admitted to the hospital "with a diagnosis" of "pulmonary contusion (lung bruise), right rib fractures and possible liver contusion." However, Defendant reports that after substantial testing, the final report from that hospital visit ruled out these injuries. Dr. Goitz, who performed surgery on Plaintiff's shoulder, documented that the Plaintiff had no complaints and felt "good" just three months after the surgery. He concluded that Plaintiff "achieved all the goals of therapy and rehabilitation including good range of motion and strength." However, in his affidavits, Mr. Juncaj claims that his shoulder injury prevents him from lifting anything over ten pounds and prevented his return to work and usual leisure activities. Mr. Juncaj claims he drives rarely and gets dizzy when going around curves. Defendants have submitted evidence of Mr. Juncaj driving on curved roads in Detroit. The extent of the impairments is vigorously disputed.

Applying the submitted evidence and interpreting it in a light most favorable to Plaintiff, the jury could conclude that Plaintiff's impairments are objectively manifested. Physician

testimony as to Plaintiff's mental condition could suggest a psychological illness. Shoulder impairment was documented by doctors.

Plaintiff's alleged injuries could lead a reasonable jury to conclude that there has been an impairment to an important body function. Mental health, as well as use of the arm, neck, and back, is important to daily living.

Under a given interpretation of the facts, it would be possible for the jury to conclude that a serious impairment affected Plaintiff's general ability to lead his normal life. Plaintiff claims that his mental and physical condition has forced him to retire from his auto manufacturing job at Chrysler, that he has been unable to work around the house, and that he is unable to work on family vehicles. He claims all of these activities were central to his life prior to the accident. Should the jury weigh the evidence in favor of the Plaintiff, it could reasonably conclude that such impairments of important body functions have influenced Plaintiff's capacity to live in his normal, pre-incident manner of living. This would be similar to the McCormick court finding in favor of the plaintiff whose injury led to an inability to bear weight on his ankle, leaving him unable to perform the functions necessary for his job for at least fourteen months and also impacting his leisure activities.

Defendants' main argument in support of its motion for summary judgment is that Plaintiffs have failed to establish a causal connection between the alleged injuries and the accident. Defendants' argument relies on facts and inferences that must be weighed by a jury.

Drawing all inferences in the light most favorable to Plaintiff, this court finds that there is a factual dispute concerning the nature and extent of the injuries and their effect on Plaintiff's capacity to live his normal life.

# **ORDER**

It is hereby **ORDERED** that Defendants' August 21, 2009 motion for summary judgment is **DENIED.**


Date: October 18, 2010                                   s/John Corbett O'Meara
                                                         United States District Judge




     I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date, October 18, 2010, using the ECF system.


                                                         s/William Barkholz
                                                         Case Manager